UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JENNIFER STEWART, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | 1:13-cv-00043-SEB-TAB |
| SECURATEX LTD, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

This cause is before the Court on Defendant's Motion for Summary Judgment [Docket Nos. 24, 25], filed on December 06, 2013, pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff Jennifer Stewart ("Ms. Stewart") brought her claim against Defendant Securatex, Inc. ("Securatex"), her former employer, based on her allegedly retaliatory termination, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* and under 42 U.S.C. § 1981.

For the reasons set forth in detail below, Securatex's Motion for Summary Judgment is <u>GRANTED</u>.

1

**Factual Background**

Ms. Stewart was employed by Securatex, a security firm, for more than seven years prior to her termination on October 6, 2011. She bases her claim for unlawful termination on an email she sent to the Securatex human resources director describing the unequal treatment of a fellow employee, an African-American security guard. Securatex denies that Ms. Stewart was terminated for having sent that email. Rather, it was due to her lagging performance and failure to meet the expectations of her employment.

**A.  Ms. Stewart's Work History**

Securatex provides private security services for Indiana and Illinois businesses who engage the company for that purpose. Securatex has also previously contracted with companies located in Michigan. Stewart Dep. at 15:22-16:4. In October 2004, Ms. Stewart commenced her employment with Securatex on a full time basis as the operations manager. *Id.* at 14, 17. Three years later, in July 2007, Securatex promoted Ms. Stewart to regional manager, a position which reported directly to the owner of Securatex, Patricia DuCanto. *Id.* at 17. In addition to owning Securatex, Ms. DuCanto oversees the day-to-day operations of the company including supervising and dismissing employees as needed. Pl.'s Resp., Ex. K, at 3; Def.'s Interr. Resp. ¶¶ 5, 16-18; Def.'s Br. at 1-2; Schenk Dep. at 15.

On January 1, 2008, Ms. Stewart was promoted to regional vice president of operations. Pl.'s Resp., Ex. G, Def.'s Interr. Resp. ¶ 2. Two years later, in 2010, Securatex

hired Bill Heiman as managing director of operations, and Ms. Stewart began reporting to him.  The following year, in July 2011, Ms. Stewart moved into the sales department to assume the role of business development manager.   During this same time period, Defendant's senior management was re-structured resulting in Jack Schenk's becoming the vice president of sales and chief operating officer; Mr. Schenk had come to Securatex from Securitas, a competing security company.  Pl.'s Resp. at 8; Stewart Dep. at 20.  After joining the company, Mr. Schenk terminated the employment of several managerial-level employees.  Landman Dep. at 50:5-11, 98:3-8.  Nathan Wolfe was hired to take over as regional vice president of operations, the position previously filled by Ms. Stewart. Landman Dep. at 20:9-24. The hiring of Mr. Wolfe, who had formerly worked with Mr. Schenk at Securitas, and was recommended by Mr. Schenk. Schenk Dep. at 84:11-85:12. In her new sales position, Ms. Stewart provided customer service as well as managed relationships with various clients and employees. Stewart Dep. at 21:18-21. Despite some uncertainty as to the reason she was reassigned to her new role, she performed those responsibilities at the same level of pay she had received in her prior position.  *Id.* at 36:5-37:4; Landman Dep. at 24:9-16.

In late September 2011, Mr. Schenk was informed that Ms. Stewart had behaved inappropriately at a trade conference she had attended on behalf of Securatex. Stewart Dep. at 89:25-91:11.  A few days thereafter, specifically on October 5, 2011, Mr. Schenk was informed that during a meeting with a customer, Mike Turk, Ms. Stewart had expressed her concern that Securatex was becoming more "corporate," which Defendant interpreted

as a criticism of its new structure. *Id.* at 96:21-97:5. On October 6, 2011, Securatex terminated Ms. Stewart's employment, neither formally nor progressively disciplining her beforehand. Pl.'s Resp., Ex. H, ¶ 25. In the years prior to her termination, Ms. Stewart's performance had earned her various recognitions, awards, and pay bonuses. Stewart Dep. at 164. Mr. Schenk, Ms. Stewart's supervisor at the time of termination, did not place her on a performance improvement plan. In fact, Securatex had not issued a negative performance evaluation of her prior to her termination. *Id.;* Pl.'s Resp., Ex. H, ¶ 15, ¶ 17.


**B. Ms. Stewart's Communication with Human Resources on September 29, 2011**

A few days prior to Ms. Stewart's termination, on September 29, 2011, Leila Gershanoff, a human resource specialist with Securatex, mentioned to Ms. Stewart her perceptions of disparate treatment by Securatex of Julius Farmer, an African-American security officer, compared to the treatment accorded to Curtis Babb, a Caucasian security officer. Stewart Dep. at 117. Ms. Gershanoff's duties included reviewing the personnel decisions of manager, Nathan Wolfe, with respect to the discipline meted out to Mr. Farmer and Mr. Babb. After learning of Ms. Gershanoff's concerns, Ms. Stewart sent the following email to Deborah Landman, Securatex's human resources director:

> Hello. It has been brought to my attention that we are not treating all of the officers fairly. There is a black officer that was a Sgt. at Wishard fired for timecard falsification. The white officer, also a Sgt. that did the same thing was only removed from the site and received a final warning. There are some other issues too. One of the officers was suspended for calling me about finding a replacement to work for him. It is becoming very concerning to me at this point. I know how

important it is to be consistent and to treat all officers the same and
we're not anymore.  Email Sept. 29, 2011.

In a follow-up email, Ms. Stewart conveyed the names of the security officers she had only generally referenced in her initial email, explaining her reason for not providing those names previously.   Stewart Dep. at 149.  According to Securatex, Ms. Stewart's September 29th email was neither shared with Ms. DuCanto nor Mr. Schenk, the senior managers who were involved in making the decision to terminate Ms. Stewart's employment.[1]

## C.  Ms. DuCanto's Knowledge of Ms. Stewart's September 29, 2011 Email

Ms. Stewart disputes Defendant's assertion that Ms. DuCanto lacked knowledge of Ms. Stewart's September 29, 2011, email prior to making the decision to terminate her employment.  Noting that only one week separated Ms. Stewart's email from the decision to terminate her employment, Ms. Stewart contends that this short time interval constitutes convincing evidence of causation.   Landman Dep. at 130.   Ms. Stewart also cites as evidence of causation the statement made by Rich Ross, Securatex's past chief information officer, to Ms. Landman and Ms. Stewart to the effect that in 2004 Ms. DuCanto routinely received copies of all Securatex emails. *Id.* at 103; Stewart Dep. p. 163.   According to Plaintiff, Ms. Landman could not recall with 100 percent accuracy that she had not forwarded Stewart's email to Ms. DuCanto, or that she had not spoken with Ms. DuCanto

---

[1]   There is an unresolved factual dispute as to who specifically made the actual decision to terminate Ms. Stewart's employment.  That uncertainty does not prevent our ruling, however, on summary judgment.

about Ms. Stewart's allegation of race discrimination prior to her termination on October 6th. Landman Dep. at 101-03. Ms. Stewart maintains that Ms. Landman, to whom the email was directed, did in fact have discussions with Ms. DuCanto about the email prior to Ms. Stewart's termination based on these circumstantial facts, including that in the past complaints against management were routinely forwarded to Ms. DuCanto. Schenk Dep. at 37, 77-78; Landman Dep. at 125-28. It is, in any event, undisputed that during the termination meeting, no reference was made to the September 29th email or the unfair manner in which African-American security guards were being treated by the Company. Stewart Dep. at 46:13-23; Landman Dep. at 73:11-14.

## Legal Analysis

## Summary Judgment

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the Court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. *Id*. at 255. However, neither the "mere existence of some alleged factual dispute between the

parties," *Id*., at 247, nor the existence of "some metaphysical doubt as to the material facts," (*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)) will defeat a motion for summary judgment. *Michas v. Health Cost Controls of Ill., Inc.,* 209 F.3d 687, 692 (7th Cir. 2000).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323. The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case. Id. at 325; *Doe v. R.R. Donnelley & Sons, Co.,* 42 F.3d 439, 443 (7th Cir. 1994). Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir. 1994). But, if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated. *Celotex,* 477 U.S. at 322*; Ziliak v. AstraZeneca LP,* 324 F.3d 518, 520 (7th Cir. 2003). Further, a failure to prove one essential element "necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323.

The summary judgment standard is applied rigorously in employment discrimination cases, because intent and credibility are such critical issues and direct evidence is rarely available. *Seener v. Northcentral Technical Coll.,* 113 F.3d 750, 757

(7th Cir. 1997); *Wohl v. Spectrum Mfg., Inc.,* 94 F.3d 353, 354 (7th Cir. 1996). To that end, we carefully review affidavits and depositions for circumstantial evidence which, if believed, would demonstrate discrimination. However, the Seventh Circuit has also made clear that employment discrimination cases are not governed by a separate set of rules, and thus remain amenable to disposition by summary judgment so long as there is no genuine dispute as to the material facts. *Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 410 (7th Cir. 1997).

## Discussion

Ms. Stewart alleges that she was terminated because she complained of racial discrimination by a Securatex manager against a fellow employee, who was an African-American security guard, in violation of Title VII and 42 U.S.C. § 1981. Under Title VII, it is unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). It is well-settled that these statutory protections extend to employees who claim to have acted to protect the rights of others but are terminated in retaliation for such acts under § 1981. *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 445, 128 S. Ct. 1951, 1954, 170 L. Ed. 2d 864 (2008) (ruling that 42 U.S.C. § 1981(a) encompasses a complaint of retaliation against a person who has complained about a violation of another person's contract-related rights.)

Well-established principles of law support a claim for relief based on this form of retaliation. *Benedict v. Eau Claire Pub. Sch.,* 139 F.3d 901 (7th Cir. 1998). A plaintiff may prove retaliation under Title VII by reliance on either direct evidence of discrimination or indirectly through the burden-shifting analysis established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973); *Scaife v. Cook County,* 446 F.3d 735, 739 (7th Cir. 2006). Typically, the direct method of proof is used when there is an admission of discriminatory animus by the employer. *Phelan v. Cook County,* 463 F.3d 773, 779 (7th Cir. 2006). There has been no such admission by Securatex here. Securatex asserts that it terminated Ms. Stewart, an at-will employee, for her failure to meet performance expectations, not for any racially discriminatory reason.

In the absence of direct evidence to support a claim of discrimination, "[a] plaintiff can also prevail under the direct method of proof by constructing a 'convincing mosaic' of circumstantial evidence that 'allows a jury to infer intentional discrimination by the decision-maker.'" *Rhodes v. Illinois Dep't of Transp.,* 359 F.3d 498, 504 (7th Cir. 2004) (quoting *Troupe v. May Dep't Stores Co.,* 20 F.3d 734, 737 (7th Cir. 1994)). To defeat summary judgment based on this method, "'all that is required is evidence from which a rational trier of fact could reasonably infer" that the plaintiff was fired by the defendant due to discriminatory intent. *Phelan,* 463 F.3d at 780 (quoting *Troupe,* 20 F.3d at 736). "That circumstantial evidence, however, 'must point directly to a discriminatory reason for the employer's action.'" *Cerutti v. BASF Corp.,* 349 F.3d 1055, 1061 (7th Cir. 2003) (quoting *Adams v. Wal-Mart Stores, Inc.,* 324 F.3d 935, 939 (7th Cir. 2003)).

To make out a *prima facie* case of retaliation, a plaintiff must present sufficient evidence to establish that: (1) she engaged in statutorily-protected conduct; (2) she suffered an adverse employment action; and (3) there was a causal connection between the two. *Jones v. Res-Care, Inc.*, 613 F.3d 665, 671 (7th Cir. 2010); *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006).

There is no dispute that Ms. Stewart was engaging in protected activity when she sent her September 29th email and Securatex does not dispute that she suffered an adverse employment action in the form of her termination. Thus, we address in detail only the final element of a retaliation claim, to wit, causation.

A plaintiff can survive summary judgment based on circumstantial evidence proffered to satisfy the direct method of proof. Such evidence might include "[s]uspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn." *Hossack v. Floor Covering Associates of Joliet, Inc.,* 492 F.3d 853, 862 (7th Cir. 2007) (quoting *Troupe,* 20 F.3d at 736). "The ultimate question the parties and the court always must answer is whether it is more likely than not that the plaintiff was subjected to the adverse employment action." *Hobgood v. Illinois Gaming Bd.*, 731 F.3d 635, 644 (7th Cir. 2013). Ms. Stewart attempts to rely on this mosaic of evidence to establish causation.

**1. Suspicious Timing.** Ms. Stewart contends that the brief interval of time that passed between her protected activity and her suffering the adverse employment action supports an inference that the decision-maker acted in terminating her employment based on the email she had written, of which her supervisor surely had knowledge. However, "'[s]uspicious timing alone is rarely sufficient to create a triable issue' as to the requisite causal connection." *Young-Gibson v. Bd. of Educ. of City of Chicago*, 11 C 8982, 2013 WL 4606785 (N.D. Ill. Aug. 29, 2013) aff'd, 558 F. App'x 694 (7th Cir. 2014); *Kodl v. Bd. of Educ.,* 490 F.3d 558, 563 (7th Cir.2007) (quoting *Moser v. Ind. Dep't of Corr.,* 406 F.3d 895, 903 (7th Cir.2005)). The few days that separated the two critical events upon which Ms. Stewart relies as proof of race-based animus may have simply been the result of coincidence or, as Ms. Stewart notes, it might have reflected a racist reaction by Defendant to her engagement in the protected activity. *Scott v. Sunrise Healthcare Corp.,* 195 F.3d 938, 941 (7th Cir. 1999); *Johnson v. City of Fort Wayne*; *Holland v. Jefferson Nat'l Life Ins. Co.*, 883 F.2d 1307 (7th Cir.1989); *Shirley v. Chrysler First, Inc.*, 970 F.2d 39 (5th Cir.1992) (a showing that the adverse employment action occurred on the heels of the protected activity is indirect evidence of retaliation).

In *Scott*, the plaintiff had a spotless personnel record, who experienced what was described as a negative employment atmosphere only after he had lodged his complaint. Here, Ms. Stewart's performance had not been similarly impeccable. In fact, she had been transferred to a sales position months before she sent her email to Ms. Landman, and, while arguably not a demotion, her change of position was clearly not a promotion. Pl.'s Resp.

at 2; Def.'s Br. at 4; Stewart Dep. at 19:7-14 Schenk Dep. at 13:22-24.  Securatex cites three incidents of declining performance by Ms. Stewart in 2011:  (1) her indiscrete criticisms of the new corporate structure expressed to Mr. Turk, a client, and Mr. Wolfe, a co-worker; (2) the reports received by the company about Ms. Stewart's inappropriate behavior at a trade conference in September 2011, and (3) Ms. Stewart's failure to secure the attendance of a client as she was expected to do at the August 2011 company golf outing.  Schenk Dep. at 32:23-34:1, 64:7-13, 113:14-114:9; Landman Dep. at 54:9-18. Objectively viewed, her record of on-the-job performance is clearly more checkered than in *Scott*.  Nonetheless, we agree that if additional evidence exists to establish causation, which would undermine the claim of the decision-makers who terminated Ms. Stewart, then the timing evidence might be more persuasive on the issue of causation.  Since timing alone is insufficient to show causality, we must determine whether its persuasive force is enhanced by the other facts Ms. Stewart has adduced.


**2. Ambiguous Explanations and Racist Statements.**  Plaintiff proffers the testimony of two former Securatex employees, Kevin Webster and Steve Stalnaker, who attested to Ms. DuCanto's regular use of racial slurs against certain employees.  Ms. Stewart contends that such racial epithets and racist remarks corroborate her theory that she was terminated from her job for race-based conduct.   Mr. Webster specifically recounted that Ms. DuCanto called him a "Black asshole" and a "damned nigger." Webster Dec. at ¶¶ 1, 4.  Ms. DuCanto also allegedly was overheard multiple times, most

recently in 2008, by Ms. Stewart and Mr. Stalnaker remarking: "I can smell a nigger in the woodpile." Pl's Resp. at 20; Stewart Dep. at 150:8-152:3, 154:21-25, 155:5-9; Stalnaker Dec. at ¶¶ 1, 3-6. Plaintiff maintains that Ms. DuCanto's racist remarks evidence her underlying racism which constituted the actual cause for her firing, even though the alleged statements made by Ms. DuCanto were made well before her termination. Ms. Stewart further contends, but without specific evidentiary support, that Securatex management had a practice of using "ambiguous statements" to camouflage their true reasons for dismissing her, in order to hide their discriminatory attitudes.

The Defendant challenges these statements as not relevant, characterizing them as "Stewart's attempt to cast DuCanto as a racist" to offset the otherwise uncontroverted fact that DuCanto knew nothing about the September 29th email. Def.'s Br. at 16. We are not so easily convinced that these arguments are no more than diversionary tactics by Ms. Stewart. While alone these remarks may be insufficient, together they may constitute evidence to buttress other circumstantial evidence. As Plaintiff maintains, the "time difference might lessen their evidentiary punch, but the passage of time does not make them inadmissible" or irrelevant. *Perez v. Thorntons, Inc.*, 731 F.3d 699, 710 (7th Cir. 2013). Clearly, the timing of these comments does lessen their persuasive force, but considered as a whole—a mosaic, in other words—they may not be entirely irrelevant.

Thus, the gathering force of circumstantial evidence may suffice to create an inference of racial animus. *Hossack,* 492 F.3d at 862. However, when viewed in the light

of other circumstantial evidence and uncontroverted facts, there is insufficient evidence before us here to support the heavy weight of a discriminatory inference in Ms. Stewart's favor. A jury could not conclude on the basis of the evidence in this record that Ms. DuCanto knew that Ms. Stewart had lodged a discrimination complaint against the company and that it terminated her on this basis. Thus, even considered together along with the element of timing, there is insufficient evidence to support Plaintiff's claim that she was retaliated against for race-based reasons.

**3. Similarly-situated Comparators.** Ms. Stewart also cites the experience of a former colleague, Steve Stanaker, a similarly-situated Securatex employee as evidence from which a jury could conclude the company was operating out of racial animus in terminating her employment. The Seventh Circuit has held that "'behavior toward or comments directed at other employees in the protected group is one type of circumstantial evidence that can support an inference of discrimination.'" *Hasan v. Foley & Lardner, LLP*, 552 F.3d 520 (7th Cir. 2008). Mr. Stalnaker has testified that when he refused to staff a client's security force with more white guards, as suggested by the client, Ms. DuCanto responded by pulling him off of the account, transferring him back to Indianapolis from Chicago, and reducing his salary by more than $1,600 per month. Stalnaker Dec. at ¶¶ 5-7.

However, Mr. Stalnaker's experience, even viewed in a light most favorable to Ms. Stewart, is not sufficiently similar to serve as a valid comparator to her situation.

> [The] method of proof is flexible, common-sense, and factual; it asks essentially, are there enough common features between the individuals to allow a meaningful comparison because there must be sufficient commonalities on the key variables between the plaintiff and the would-be comparator to allow the type of comparison that, taken together with the other *prima facie* evidence, would allow a jury to reach an inference of discrimination." *Coleman v. Donahoe*, 667 F.3d 835 (7th Cir. 2012).

Arguably, the common intention of both Ms. Stewart and Mr. Stalnaker to protect African-American security officers is not sufficient to establish their similarity as comparators in this context. In any event, this one bit of evidence does not overcome the central failure in Plaintiff's theory of her case: that Ms. DuCanto had knowledge of the email complaint and that knowledge informed her subsequent decision to terminate Ms. Stewart's employment on October 6th.

The suspicious timing, ambiguous statements, and alleged comparators considered as a whole fail to create a convincing mosaic of circumstances fulfilling the criteria for causation the elements of a *prima facie* case of retaliation. A reasonable jury would not be able to conclude on the basis of this evidence that race-based discrimination prompted Ms. Stewart's termination of employment. Nevertheless, we shall examine Plaintiff's pretext argument as if she has established a *prima facie* showing. Applying the *McDonnell Douglas* framework, if Securatex succeeds in establishing a legitimate, non-discriminatory reason for its actions, the burden shifts back to Ms. Stewart to prove that the cited reason for her termination was pretextual. 411 U.S. at 802.

# Pretext

Securatex asserts that Ms. Stewart's employment was terminated for her failure to meet the company's performance expectations. In support of this assertion, Securatex proffers evidence showing that the quality of Plaintiff's overall performance declined in 2011. The list of problems she encountered included: (1) her indiscrete comments to Mr. Turk regarding the new "corporate" attitude at Securatex; (2) the reports received by Securatex's managers about Ms. Stewart's inappropriate conduct at the trade conference in late September 2011; and (3) Ms. Stewart's failure to secure the attendance of a client at the August golf outing as she was expected to do. Schenk Dep. at 68:8-19, 69:14-2.

Ms. Stewart contends that Securatex's reasons for her termination are false—lies, as it were—and that the concerns the management expressed about her employment record are unsupported by her history of not just acceptable, but good on-the-job performance. However, to demonstrate pretext, Ms. Stewart must do more than show that she was a "good enough" employee; she must show that the Securatex managers and owner have cited reasons for terminating her that it knows are not true. *Everroad*, 604 F.3d at 477 (*citing Gates v. Caterpillar, Inc.,* 513 F.3d 680, 690 (7th Cir. 2008)). Ms. Stewart must be able to establish that a reasonable jury could conclude that the reasons cited by the Defendant were dishonest, that the true underlying reasons were "based on prohibited discriminatory animus." *Benuzzi v. Board of Education of the City of Chicago, et. al.,* 647 F.3d 652 (7th Cir. 2011) (citing *McJowan v. Deere & Co.*, 581 F.3d 575 (7th Cir. 2000)). To do this successfully, Ms. Stewart must establish that either (1) the proffered reasons are

not founded in fact; (2) the reasons provided by the defendant did not actually motivate the Defendant's personnel actions; or (3) the reasons provided are insufficient to motivate the actions. *Id.*

Despite the disagreement between the parties as to the identity of the actual decision-maker in terminating Ms. Stewart's employment, it is undisputed that discussions regarding Ms. Stewart's faltering job performance had occurred between Ms. DuCanto and Mr. Schenk during the weeks leading up to her termination in 2011. Schenk Dep. at 29-30. Moreover, Mr. Schenk maintained consistently throughout his deposition that Ms. DuCanto was the final decision-maker. *Id*. at 15, 29 30, 36, 37, 40, 66, 67, 79. Both Mr. Schenk and Mr. Stalnaker have also maintained that Ms. DuCanto was involved in some fashion in all employee termination decisions. *Id*.; Stalnaker Dec. ¶ 8. According to Mr. Stalnaker, Ms. DuCanto sometimes attempted to underplay or "disguise her involvement in terminations," citing as an example the instance when Mr. Stalnaker returned to the office from a business trip and Ms. DuCanto had fired an employee, explaining to Mr. Stalnaker that he would need to take responsibility for it, which he subsequently did. Stalnaker Dec. ¶ 9. On this basis, Ms. Stewart maintains that Ms. DuCanto was the primary, if not sole, decision-maker with regard to her termination. Given this view of the evidence, Plaintiff must be able to adduce sufficient evidence to prove that Ms. DuCanto's discriminatory animus was the reason for her dismissal.

In that context, Plaintiff cites the fact that Ms. DuCanto had direct knowledge of the email complaint having received a copy of the September 29th email, (Pl's Resp. at

19) based on the statement of Rich Ross, a former Securatex chief information officer, who told her that Ms. DuCanto received "copies of all Securatex emails." *Id*. Even if true, the absence of any timeframe relevant to Ms. Stewart's termination seriously undermines its admissibility, since Mr. Ross held the position of chief information officer substantially before Plaintiff's October 2011 termination.

Ms. Stewart also references the role of the human resources director, Ms. Landman, in the decision-making process in the months leading up to her termination. Since according to Ms. Stewart, Ms. Landman "could not conclusively say whether she consulted with Ms. DuCanto about Ms. Stewart's protected activity," the Court cannot rule out the possibility that such a conversation did occur. *Id*. at 2. Ms. Landman did testify, however, that she neither forwarded nor discussed Stewart's September 29 email with DuCanto prior to the termination, and that she was 99.9 percent positive that her memory of those events was correct. Landman Dep. at 56:13-19, 101:17-103:7. Ms. Stewart seeks to capitalize on a mere wisp of a possibility that Ms. Landman's memory was not accurate as to these facts. As such, Plaintiff's wishful theorizing is unavailing; it simply cannot overcome the persuasive strength of Ms. Landman's assertions to the contrary.

Plaintiff argues that since Ms. Landman knew of her email and that Ms. Landman conversed with Ms. DuCanto "about Stewart's employment in the days between her protected activity and termination," a jury could consider these circumstances together to conclude that there was in fact a specific communication between them regarding the September 29th email. Pl's Resp. at 19. Again, Ms. Landman directly disputes Plaintiff's

attempted spin. Ms. Landman stated that even though she and Mr. Schenk agreed that she would tell Ms. Stewart that the reason for her termination was Securatex's "decision to go in another direction," she did not follow that plan. Landman Dep. at 55:6-12. When Ms. Landman arrived to give Ms. Stewart notice of her termination (Stewart Dep. at 43:1-5), according to both Ms. Landman and Ms. Stewart, Ms. Landman offered as the reasons for Ms. Stewart's termination Ms. Stewart's comments about the company going more "corporate" as well as the comments Ms. Stewart had previously made about Mr. Schenk possibly purchasing Securatex. Stewart Dep. at 44:17-22, 45:6-17, 109:25-110:10, 149:19-150:7. Ms. Landman's testimony simply does not jibe with Plaintiff's characterizations. Further, Ms. Stewart's own testimony casts doubt on her arguments when she said, "I had a feeling Jack [Schenk] was going to replace all of us with his own people." *Id.* at 43: 11-12.

In sum, Plaintiff's contentions that the stated reasons for her dismissal were simply a cover for the real, discriminatory reasons underlying her termination fail for lack of evidentiary support. The alleged discrepancies she cites regarding the identity of the final decision-maker as well as her continued assertion that Ms. DuCanto had direct knowledge of the email because of her routine practice of receiving copies of all employee emails, and finally Plaintiff's implausible exaggerations of Ms. Landman's level of certainty as "only" 99.9 percent fail to establish that her termination was not based on the declining quality of her job performance. Accordingly, Plaintiff's efforts to establish pretext fall short of the mark.

## **Conclusion**

Ms. Stewart has failed to provide evidence from which a reasonable jury could conclude that (1) she was a Securatex employee who engaged in protected activity by sending an email complaint to Defendant's management-level employees(s) regarding discrimination against an African-American security guard; (2) who was otherwise meeting the legitimate employment expectations of her employer; (3) that she was terminated; and (4) that her termination was the result of unlawful race-based discrimination. Further, there is no evidence that Defendant's rationale for her termination as performance-based was pretextual.

We therefore <u>GRANT</u> Defendant's Motion for Summary Judgment under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* and under 42 U.S.C. § 1981. Final judgment shall enter accordingly.

IT IS SO ORDERED.

9/30/2014

_Sarah Evans Barker_

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana